**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDY SMITH, | CASE NO. CV-F-04-6027 LJO |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 12) |
| vs. | |
| JO ANNE BARNART, Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

Plaintiff Andy Smith ("claimant") seeks judicial review of an administrative decision denying his claim for Disability Insurance Benefits and Supplemental Security benefits under the Social Security Act, Titles II and XVI ("Act"). Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a December 14, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed his complaint on July 29, 2004 and his opening brief on April 18, 2005. The Commissioner filed her opposition to the appeal on June 22, 2005. Claimant filed a reply brief on July 6, 2005.

/////

1

**BACKGROUND**

**Administrative Proceedings**

Claimant filed an application for disability insurance benefits and supplemental security income under the Social Security Act in March 2003 alleging a disability onset of September 1, 2002 due to cervical fusion, headaches, right elbow pain, pain and numbness in his right hand and sleep problems. (Administrative Record ("AR") 52-55, 193-96.)   The application was denied initially and upon reconsideration.  (AR 37-40, 43-46.)  Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on April 26, 2004. (AR 14-18.)  The Appeals Council denied review.  (AR 5-8.)  Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**Claimant's Background and Work Experience**

Claimant was born on January 28, 1955.  He completed the tenth grade and can read and write. (AR 204.)  His past relevant work is as an Auto CAD drafter.  (AR 204.)

**Medical History**

The pertinent medical history is summarized as follows.

A treatment note from Kaiser Permanente on October 17, 2002 indicates that claimant reported that pain in his neck is intermittent for the past 3 years.  (AR 109.)  He was diagnosed on November 1, 2002 with neck pain, headaches and hypertension. (AR 104.)  On December 3, 2002, Jimmy Sio, M.D., completed a check the box disability certificate, form indicating that claimant is disabled from headaches and neck pain until December 30, 2002. (AR 97.)  On March 5, 2004, Arturo Palencia, M.D., completed a check-the-box form stating that claimant can sit continuously for 30-40 minutes, walk for one hour and sit for 2-3 hours, requiring a change of positions and can lift 6-7 pounds and has moderate pain.  (AR 94.)

On April 23, 2003, state agency physician, Lavanya Bobba, M.D., completed the Physical Residual Functional Capacity Assessment form. (AR 110 - 117.)  Dr. Bobba opined that claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk/sit 6 hours out of an 8-hour workday. (AR 111.)  Dr. Bobba opined that claimant had limitations in the upper extremities in reaching in all directions and gross manipulation restrictions including avoiding frequent above shoulder level work and forceful grasping and twisting.  Elpidio Fonte, M.D. concurred in the findings of Dr. Bobba.

1   (AR 116.)

2   Claimant received pain therapy from Advanced Pain Medicine from January 9, 2003 to July 10,

3   2003.  (AR 121-156.)  Claimant reported being injured in 1991 from a fall and having surgeries

4   including cervical fusion.  He reported chronic neck pain.  (AR 153.)  On physical examination on

5   February 9, 2003, Chris S. Yoon, M.D., reported claimant was oriented, obese, range of motion limited

6   in all directions, severe tenderness at bilateral suboccipital areas.  (AR 154.)  Dr. Yoon reviewed x-ray

7   reports of the cervical spine which showed solid fusion without acute complications and no evidence

8   of neural foramina stenosis.  (AR 154.)  Dr. Yoon opined claimant had chronic pain syndrome with

9   history of cervical fusion from C3 to C6, multiple trigger points/myofascial pain syndrome of the head

10  and neck causing pain and headaches, and obesity.  (AR 154.)  Dr. Yoon stated that claimant's disability

11  would be addressed on a monthly basis.  (AR 154.)  In a treatment note of March 6, 2003, Dr. Yoon

12  reported limited range of motion of the neck but no motor deficit, and chronic pain.  (AR 149.)

13  An MRI scan of the cervical spine on December 23, 2003 showed mild bilateral foraminal

14  stenosis with no recurrent disc herniation, canal stenosis or cord compression; a bulging disc at C2-3

15  with mild canal stenosis with no definite cord compression or foraminal stenosis.  (AR 158.)  The

16  remainder of the records indicate monthly visits and multiple forms of physical therapy, trigger point

17  injections and medications, but claimant continued to have pain and headaches, neck and right hand/arm

18  pain and knee/back pain.  (AR 159-162, 163-187.)

19  **Hearing Testimony**

20  Claimant testified that as an Auto CAD drafter he did computer drafting, aid drafting, and land

21  surveying.  (AR 204.)  He testified he could no longer do the work because he could not sit very long.

22  (AR 205.)  Before being a CAD drafter, he worked in the oil fields until he fell off a platform and hurt

23  his head.  (AR 205-206.)  The accident resulted in surgery on his elbow and carpal tunnel.  (AR 206.)

24  He cannot work now because of severe headaches, lack of sleep, he cannot manipulate with his right

25  hand.  (AR 206.)  He testified he cannot function - his head hurts, and has back pain.  (AR 206-207.)

26  He has had two surgeries on his neck and fused the bones.  (AR 207.)  He had carpal tunnel surgery in

27  1994 and it repaired the problem.  (AR 207.)  He said he still cannot hold things very long and cannot

28  carry things with his right hand.  (AR 208.)  He has had rotator cuff surgery.  He can only lift 3-4 pounds.

He goes for pain treatment - injections in his neck, muscle relaxers, physical therapy for about six weeks. (AR 209.)  He has applied for implantation of an electronic stimulator for his neck.  (AR 209.)  He settled a  worker's compensation claim in 2000-2001, but they did not agree to pay for future medical. (AR 210.)  He said that a new problem is occurring - swelling of his feet and lower leg.  The doctors told him to lay down.  (AR 210.)  He is unable to lay down because after a brief time, he is in pain.  (AR 211.)  He sleeps at night sitting up.  He has to move around to relieve the pain of being in one position. (AR 212.)  He takes pain medication which causes drowsiness.  He can walk a half a block, stand for 10-15 minutes and sit 5-15 minutes.  (AR 213.)  He does not help around the house.  (AR 214.)  He has not had treatment for the carpal tunnel since the surgery.  (AR 216.)

## ALJ Findings

In his April 26, 2004 decision , the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 14.)  In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 17-18):

1. The claimant met the disability insured status requirements of the Act on September 1, 2002, the date the claimant stated he became unable to work, and continued to meet them through December 31, 2002, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since September 1, 2002.

3. The medical evidence establishes that the claimant has neck, shoulder and back pain status post cervical fusion in 1998, status post right rotator cuff surgery in 1999, obesity and episodic headaches, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  His history of right carpal tunnel release in 1994 and history of right ulnar surgeries in 1994 and 1995 are slight impairments which have only minimal, if any, effect on his ability to work.

4. The claimant's subjective complaints and alleged functional limitations are not as severe as asserted and are only partially credible.

5. The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk 6 hours in an 8 hour workday, but

he cannot do any pushing, pulling, frequent overhead reaching or forceful grasping and twisting with the right upper extremity, or climb ladders, ropes or scaffolds. 20 CFR §404.1545 and 416.945.

6.  The claimant's past relevant work as a CAD draftsman did not require the performance of work-related activities precluded by the above limitations. 20 CFR §§404.1565 and 416.965.

7.  The claimant's impairments do not prevent the claimant from performing his past relevant work as a CAD draftsman.

8.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. 20 CFR §§404.1520(c) and 416.920(c).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence

1   in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

2       Claimant contends the ALJ erred by: (1) improperly evaluating his impairments including his

3   obesity, (2) improperly rejected the treating physician, (3) improperly considered his pain complaints,

4   and (4) incorrectly determined claimant could perform his past relevant work.

5                          **The ALJ's Finding of Residual Functional Capacity**

6       To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial

7   gainful activity due to a medically determinable physical or mental impairment which has lasted or can

8   be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(a)(3)(A).

9       The Commissioner has final responsibility to determine a claimant's residual functional capacity.

10  20 C.F.R. § 404.1546.  "Residual functional capacity" is the phrase used by the Commissioner to denote

11  a claimant's ability to perform work-related tasks despite his physical or mental impairments.  20 C.F.R.

12  §§ 404.1545(a) and 416.945(a).  Categories of residual functional capacity include sedentary, light,

13  medium, heavy and very heavy work.  20 C.F.R. §§ 404.1567 and 416.967.  In this case, the ALJ found

14  that plaintiff had the residual functional capacity to perform light work, with restrictions. Under the

15  applicable regulations, "light work" is defined as follows:

16              Light work involves lifting no more than 20 pounds at a time with frequent lifting
                or carrying of objects weighing up to 10 pounds. Even though the weight lifted
17              may be very little, a job is in this category when it requires a good deal of
                walking or standing, or when it involves sitting most of the time with some
18              pushing and pulling of arm or leg controls.  To be considered capable of
                performing a full or wide range of light work, you must have the ability to do
19              substantially all of these activities.

20  20 C.F.R. §§ 404.1567(b) and 416.967(b).  Social Security Ruling 83-10 further defines this term by

21  stating that " . . . the full range of light work requires standing or walking, off and on, for a total of

22  approximately 6 hours of an 8-hour workday."  Ruling 83-10 further explains that "[s]itting may occur

23  intermittently during the remaining time."

24      Here, the ALJ found that claimant has the residual functional capacity to lift and carry 20 pounds

25  occasionally and 10 pounds frequently and sit, stand and/or walk 6 hours in an 8 hour workday, but he

26  cannot do any pushing, pulling, frequent overhead reaching or forceful grasping and twisting with the

27  right upper extremity, or climb ladders, ropes or scaffolds.

28      Claimant argues the ALJ erred in finding any residual functional capacity because his treating

                                                    6

1    physician Dr. Palencia and also Dr. Yoon and Dr. Langlois placed restrictions which would preclude any

2    work.

3        Generally, more weight should be given to the opinion of a treating source than to the opinion

4    of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth

5    Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability

6    cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the

7    patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R.

8    §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a

9    claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even

10   where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriguez v. Bowen*, 876 F.2d 759, 761-762, n.

11   7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and

12   ambiguities in treating physician's opinion concerning level of disability sustained by social security

13   claimant, were specific and legitimate reasons for not accepting physician's opinion.)

14       The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the

15   treating physician's opinion:

16           "The ALJ may disregard the treating physician's opinion, but only by
             setting forth "specific, legitimate reasons for doing so, and this decision
17           must itself be based on substantial evidence." This burden can be met by
             providing a detailed summary of the facts and conflicting clinical
18           evidence, along with a reasoned interpretation thereof. *Id.* Furthermore,
             the ALJ's reasons for rejecting the doctor's opinion must be "clear and
19           convincing."

20   *Rodriquez,* 876 F.2d at 762 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

21        A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary

22   will concur, absent review of medical findings and other evidence. 20 C.F.R. §416.928. Claimant bears

23   the burden of proving that he is disabled by presentation of "complete and detailed objective medical

24   reports of h[is] condition from [a] licensed medical professional." *Meanel v. Apfel*, 172 F.3d 1111, 1113

25   (9th Cir. 1999) (citing 20 C.F.R. 404.1512(a)-(b), 404.1513(d)).

26       The ALJ gave a detailed summary of the facts and conflicting clinical evidence. (AR 16-22.) The

27   ALJ noted that claimant met the insured status requirements of the Act on the date of onset, September

28   1, 2002, but only through December 31, 2002: "Accordingly, the claimant cannot be entitled to a period

1   of disability and disability insurance benefits unless the evidence establishes that he was under a

2   disability on or before December 31, 2002." (AR 15.) The ALJ reviewed the applicable evidence during

3   this period:

> "However, the scant medical evidence dating prior to that date does not
> establish disability.  Indeed, these records date only from October to
> December 2002 and show that claimant sought treatment only for
> intermittent neck pain residual from a 1998 surgery and headaches.  The
> sole x-ray is of the cervical spine and shows evidence of the multilevel
> fusion but no acute injury and no encroachment on the intervertebral
> foraminal."  (AR 15) (Evidence citations omitted.)

8   The ALJ considered Jimmy Sio, M.D.'s state disability report prepared during this period, but noted that

9   only temporary disability was indicated:

> "There are several state disability forms that were completed during this
> period, but they are given little weight because their [sic] only contain
> month-to-month temporary disability determinations unsupported by the
> limited records."  (AR 15) (Evidence citations omitted.)

13   Indeed, Dr. Sio indicated a temporary disability from October 21, 2002 to November 11, 2002, from

14   November 26, 2002 to November 30, 2002, and from December 3, 2002 and ending on December 30,

15   2002.  (AR 97, 101, 102.)

16          The ALJ reviewed the evidence of claimant's attempts to obtain pain relief:

> "The medical evidence indicates that the claimant participated in physical
> therapy and pain management for chronic pain syndrome with a history
> of cervical fusion from C3 to C6 with no evidence of acute radiculopathy,
> multiple trigger points/myofascial pain syndrom of the head and neck
> muscles causing pain an[d] headaches, insomnia and obesity.  The
> claimant was urged to lose weight and exercise, but in June 2003 he told
> his then-treating physician that there had been no decrease in his pain; the
> doctor then prescribed oxycontin.  After physical therapy failed, the
> claimant underwent trigger point injections in September 2003.  He
> declined to consider additional neck surgery, promoting an increase in the
> oxycontin dosage."  (AR  15) (Evidence citations omitted.)

23   The ALJ reviewed the December 2003 cervical spine MRI which showed postoperative changes between

24   C3 and C6, "straightening of the normal cervical lordosis, mild multilevel bilateral foraminal stenosis

25   with no recurrent disc herniation, canal stenosis or cord compression, and a bulging disc at C2-3 causing

26   mild canal stenosis."  (AR 15-16, 157-158.)

27          With this backdrop of limited medical evidence, the ALJ considered the treating physician, Dr.

28   Palencia's 2004 opinion that "claimant can lift and carry up to 5 pounds, sit, stand and/or walk 3 hours

each in an 8-hour workday with no pushing, pulling or fine manipulation with the right upper extremity. Additionally he indicated that the claimant must change position frequently and has moderate pain that would restrict his ability to maintain concentration." (AR 16, 94-95.) The ALJ said he gave the opinion little weight:

> "as there is nothing establishing how the claimant's pain, which is restricted to his upper body, affects his sitting, standing and walking. Dr. Palencia's conclusion is not supported by the medical evidence of the record." (AR 16.)

The ALJ cited pertinent objective medical evidence which contradicts Dr. Palencia's opinion, as indicated *infra*. Dr. Sio diagnosed headaches, neck pain and hypertension. (AR 100, 104.) On March 31, 2003, Dr. Langlois found claimant's gait slow and restricted lumbar range of motion; however, Dr. Yoon's previous functional evaluation on March 6, 2003 showed claimant's gait was normal. (AR 133.) A treating physician's opinion is granted controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic technique and not inconsistent with the other substantial evidence in the record. 20 CFR §404.1527 (d)(2) and 416.927(d)(2). Indeed, the treatment notes reflect claimant's subjective complaints. Thus, the objective medical evidence does not corroborate significant limitations in the lower extremities.

Moreover, Dr. Palencia's opinion is on a check box form which is not corroborated by the other treatment notes and objective evidence. The Court notes the brevity of the treatment notes which do not assign the limitations imposed in the Statement form. *See Crane v. Shalala,* 76 F.3d 251 253 (9th Cir. 1996) (An ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.) An ALJ may reject a treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in form with little in the way of clinical findings to support its conclusion." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must "'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'")

The ALJ set forth specific and legitimate reasons to reject Dr. Palencia's assessment and provided a comprehensive, detailed summary of the facts and conflicting clinical evidence. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (Finding no error

1  where the ALJ discounted a treating opinion because it was in the form of a checklist, did not have

2  supportive objective evidence, was contradicted by other statements and assessments of plaintiff's

3  medical condition, and was based on plaintiff's subjective descriptions of pain.)

4  **Consideration of Obesity**

5  Claimant argues that the ALJ failed to properly consider his obesity. He argues that the ALJ

6  failed to consider the effects of his obesity on his ability to work.

7  An ALJ must consider obesity in determinations of disability.  *Hammock v. Bowen*, 879 F.2d

8  498, 503-504 (9th Cir.1989) (en banc).  See also Social Security Ruling 02-01P (discussing the

9  evaluation of obesity in disability claims), superceding Social Security Ruling (No. 00-3p).  SSR 02-01P

10 states, that as the initial step in the sequential evaluation process, "when establishing the existence of

11 obesity, we will generally rely on the judgment of a physician who has examined the claimant and

12 reported his or her appearance and build."  (SSR 02-01P, para. 4.)

13 In this case, the ALJ acknowledged that the treatment record reported that claimant is obese.[1]

14 (AR 15.)   The ALJ found that claimant's obesity was "severe," as defined by the regulations. SSR 02-

15 01P provides that "[t]here is no specific level of weight or BMI that equates with a 'severe' or 'not

16 severe' impairment. . . . Rather, we will do an individualized assessment of the impact of obesity on an

17 individual's functioning when deciding whether the impairment is severe."  (SSR 02-01P, para. 6.)

18 Claimant's main complaint is that the ALJ did not do an "individualized assessment." *See Burch*

19 *v. Barnhart*, 400 F.3d 676 (9th Cir. 2005) (ALJ adequately considered obesity; obesity did not

20 significantly limit claimant's physical or mental ability to do basic work activities, did not meet

21 requirements of listing in combination with claimant's other alleged impairments, and did not impose

22 functional limitations upon claimant's maximum remaining ability to do sustained work activities.)

23 While the SSR states that the Social Security Administration will evaluate effects of obesity, it

24 remains claimant's burden to show that obesity has some effect on his functional capacity.  *Burch v.*

25 *Barnhart*, 400 F.3d at 683 (An ALJ is not required to discuss the combined effects of a claimant's

26

27 ───────────────

   [1] Claimant argues that he is obese because she has a BMI of 51.6.  BMI is "Body Mass Index" established by the
   National Institute of Health's guidelines which generally, classify a BMI of 30.0 or above as "obesity." (SSR 02-01P, para.

28 1.)  The ALJ adopted medical records' statement that claimant was obese.

impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.)  Claimant must come forward with some evidence of how his obesity limits her functioning.  *Burch v. Barnhart*, 400 F.3d at 683 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.")

There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits his functioning.  Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. Claimant's temporary disability assessed by the physicians was the result of neck pain and headaches. (AR 101, 97, 129.) Indeed, the evidence establishes that claimant's neck pain arose from a work-related injury after which he required multiple surgeries.  The record establishes that the headaches claimant endures are the result of the neck pain, which is unrelated to the obesity.  The record lacks objective evidence of claimant's knee pain.  The medical record is silent as to whether and how claimant's obesity might have exacerbated his condition.  Thus, the evidence in the Record shows that any impairment is unrelated to his obesity. See Social Security Ruling 02-01P ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record.")

### Finding Claimant as Partially Credible

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2)

1  unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

2  treatment; and (3) the claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

3  An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain

4  testimony.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard

5  unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453,

6  1464 (9th Cir. 1995).  The ALJ must give specific, convincing reasons for rejecting the claimant's

7  subjective statements."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1147, 1148 (9th Cir. 2001) (upholding

8  adverse credibility finding where ALJ cited claimant's "lack of cooperation at the hearing, her

9  presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of

10  cooperation during consultative examinations"); *Orteza v. Shalala*, 50 F.3d 748 (9th Cir.1995) (upholding

11  adverse credibility finding where ALJ identified treating physician's statement as to lack of objective

12  evidence, pointing to the scope of activities identified in claimant's initial application, no medication

13  side effects or prescription medicine.); *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (upholding adverse

14  credibility finding on claimant's inconsistent testimony with that of treating physician's notes, minimal

15  conservative treatment for alleged incapacitating pain).

16      The ALJ partially accepted claimant's complaints of pain.  The ALJ expressly considered

17  claimant's efforts to obtain pain relief for his neck impairment.[2] (AR 15.) The ALJ identified claimant's

18  medications and treatment modalities.  Social Security Ruling 96-7p provides in pertinent part that

19  persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing

20  medications, trials of a variety of treatment modalities in an attempt to find one that works or that does

21  not have side effects, referrals to specialists, or changing treatment sources may be a strong indication

22  that the symptoms are a source of distress to the individual and generally lend support to an individual's

23  allegations of intense and persistent symptoms. *Hardman v. Barnhart*, 362 F.3d 676 (10th Cir. 2004)

24

25  [2] The ALJ noted that claimant sought physical therapy, pain management, and medication. (AR 15.)  Claimant argues the ALJ failed to consider evidence of fibromyalgia, as he was found to have 10 of 18 fibromyalgia trigger points.

26  The principal symptoms of fibromyalgia "are 'pain all over,' fatigue, disturbed sleep, stiffness, and 'the only symptom that discriminates between it and other diseases of a rheumatic character' multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia)

27  that when pressed firmly cause the patient to flinch." *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001), citing *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996).  The evidence does not establish that claimant was diagnosed with fibromyalgia.

28  The ALJ found claimant had pain post cervical fusion.  (AR 15.)

1   (error for the ALJ to fail to expressly consider claimant's persistent attempts to find relief from his pain,

2   his willingness to try various treatments for his pain, and his frequent contact with physicians concerning

3   his pain-related complaints.)  Thus, the ALJ adopted claimant's partial complaints of pain.

4        The ALJ considered ordinary techniques of credibility in rejecting claimant's full complaints of

5   debilitating pain.  The ALJ stated that claimant's impairments can reasonably be expected to produce

6   some of the pain and symptoms alleged, but the ALJ concluded that the alleged pain was not fully

7   supported: "the degree of limitation he alleges is not supported by the objective medical evidence and

8   is not entirely credible when evaluated under Social Security Ruling 96-7p."  (AR 15.)

9        The ALJ relied upon the medical evidence in the record.  The ALJ noted that the pain complaints

10   were inconsistent with the objective medical evidence. (AR 15.) The ALJ noted that the physicians only

11   gave claimant month to month temporary disability, and the medical records were otherwise limited.

12   (AR 15.)  The ALJ stated that the state agency consultants who reviewed the medical records found

13   claimant capable of light work with limitations in the upper extremities, among others.  (AR 16.) While

14   subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by

15   objective medical evidence, the medical evidence is still a relevant factor in determining the severity of

16   the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

17        The ALJ considered the settlement with the Worker's Compensation and termination from his

18   job as a CAD draftsman.

19        "The claimant testified that he . . .has waived future medical treatment in
        his Worker's Compensation settlement, indicating that he considers
20        whatever symptoms he has to be bearable with minor attention.  He
        admitted that he stopped working as a CAD draftsman because he was
21        laid off, and not for any medical reason.  He said he was unsuccessful
        when he attempted to return to that job."  (AR 16.)
22

23        Claimant argues that the ALJ incorrectly stated claimant's testimony.  Claimant argues he

24   testified that the Worker's Compensation settlement did not offer to pay for future medicals; he did not

25   testify that he "waived" future medicals.  (Opening Brief p.11.)

26        Claimant testified as follows as to the workers compensation settlement:

27        Q:     You had to waive all the future medical?

28        A.     Yes.  (AR 222.)

13

1    The testimony indicates he in fact waived reimbursement for future medical expenses in his

2  Worker's Compensation settlement.  The ALJ drew the inference that the claimant waived the medicals

3  because they were not anticipated to be significant.  The ALJ is entitled to draw inferences logically

4  flowing from the evidence in the proceedings before him.  *See Macri v. Chater*, 93 F.3d 540, 543-44 (9th

5  Cir. 1996).

6    Claimant also argues that he testified that he was unable to continue his CAD draftsman job due

7  to his disability; and he did not testify that he was laid off. Claimant testified as follows as to being laid

8  off:

9    Q:    How come you left that job?

10   A:    Because I could not sit very long.  I was continually having to get
            up and to keep my employer from noticing what I was I'd have to
11          get up and go to the bathroom and just stand around for a little
            bit. It looked like I went to the bathroom quite a few times during
12          the day.  (AR 205) . . . .

13   Q:    Why did you leave there?

14   A:    I couldn't do the work no more.

15   Q:    You couldn't?

16   A:    No, it slowed down, and they offered a couple of weeks.  But like
            I said while I was working there I was constantly going to the
17          bathroom.  I had to get up  - - -

18   Q:    I'm trying to ascertain exactly what happened for you to terminate
            your relationship as an employee.
19
     A:    Well  - --
20
     Q:    Were you laid-off?
21
     A:    No.  It slowed down at that time so, you know, the deal was laid
22          off a couple weeks and when they called me back I just them that
            I would try to get disability.  I could not do it.
23
     Q.    So, you quit because you couldn't do it?
24
     A:    Yes.
25
     Q:    Either they fired you or you quit.
26
     A:    No, I quit.  (AR 215.)
27

28  The ALJ drew the inference that claimant was initially laid off, but elected not to return to work due to

1   his impairment.  "Credibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d at

2   604; *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).

3          Here, the ALJ considered numerous factors in partially discrediting claimant's pain testimony.

4   While the ALJ did not specifically identify each of the factors as he discussed them in his opinion, he

5   nonetheless, considered the factors.  The Court does not find error.

6                                          **Past Relevant Work**

7          Claimant argues that the ALJ erred in finding he is capable of performing his past relevant work.

8          At step four, the ALJ determines whether the impairments preclude claimant from performing

9   his past relevant work.  Claimants have the burden of showing that they can no longer perform their past

10   relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th

11   Cir. 2001).  Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to

12   make the requisite factual findings to support his conclusion. SSR 82-62; *Pinto v. Massanari*, *supra*, 249

13   F.3d 840, 844.  This requires specific findings as to the claimant's residual functional capacity, the

14   physical and mental demands of the past relevant work, and the relation of the residual functional

15   capacity to the past work. SSR 82- 62 (emphasis added).  To be capable of performing his past relevant

16   work, the claimant must be able to perform:

17          1. The actual functional demands and job duties of a particular past
             relevant job; or

18

19          2. The functional demands and job duties of the occupation as generally
             required by employers throughout the national economy.

20

21   SSR 82-61; *Pinto v. Massanari*, 249 F.3d at 844.  In *Pinto*, the Ninth Circuit  rejected the argument that

22   the ALJ is required to find at step four that claimant can perform claimant's past relevant work both as

23   generally performed and as actually performed.

24          The ALJ exhaustively reviewed the relevant medical evidence regarding claimant's exertional

25   limitations. The ALJ found that claimant could lift and carry 20 pounds occasionally and 10 pounds

26   frequently and sit, stand and/or walk 6 hours in an 8 hour workday, but he cannot do any pushing,

27   pulling, frequent overhead reaching or forceful grasping and twisting with the right upper extremity, or

28   climb ladders, ropes or scaffolds.   The ALJ compared the exertional requirements of claimant's past

relevant work as a CAD drafter to the same position as defined in the Dictionary of Occupational Titles, 005.281-101.[3]  The ALJ concluded that the past relevant work of a CAD drafter is skilled and requires lifting no more than 10 pounds and standing and walking occasionally.  Claimant described his former position as  sitting at a desk and operating a computer. (AR 75.)  As described by claimant, he did not walk, stand, climb, stoop, kneel, crouch or crawl and he carried less than 10 pounds frequently. (AR 75.)   The ALJ considered the objective medical evidence to support his findings and properly rejected claimant's more restrictive exertional limitations.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Booz v. Secretary of Health and Human Resources*, 734 F.2d 1378, 1380 (9th Cir. 1984) (where an ALJ engaged in an unnecessary exercise, any error that may have occurred as a result is harmless).  Thus, the Court does not find error by the ALJ that the claimant is able to perform his past relevant work.

### CONCLUSION

        The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards.  Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Andy Smith.

IT IS SO ORDERED.

**Dated:   August 4, 2005**                       _____/s/ Lawrence J. O'Neill_____
b9ed48                                                  UNITED STATES MAGISTRATE JUDGE

---

[3]The Dictionary of Occupational Titles ("DOT") is "the Secretary's primary source of reliable job information." *See Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990); *cf.*, 20 C.F.R. §404.1566(d)(1). One purpose of the DOT is to classify identified job titles by their exertional and skill requirements. *Terry*, 903 F.2d at 1276.